### SAMUEL SHEPARDSON v. SAMUEL F. STEVENS.

*Equity—Deed—Undue influence—Reconveyance.*

I᠈ this case complainant seeks to cancel a deed of his farm, executed to the defendant, the real consideration for which was the maintenance and support of the complainant upon the farm during his natural life, by the defendant, which agreement the Court find has not been performed by the defendant, nor can it now be kept for reasons stated in the opinion; and that complainant's grievance can only be redressed by a reconveyance of the farm, which is decreed. The case is essentially one involving questions of fact.

Appeal from Macomb. (Canfield, J.) Argued October 9, 1889. Decided November 1, 1889.

Bill to set aside a deed and for a reconveyance of the property. Complainant appeals from decree dismissing bill. Reversed and decree granting relief prayed for entered in this Court. The facts are stated in the opinion.

*Dwight N. Lowell* (*A. B. Maynard,* of counsel), for complainant, contended:

1. From the pleadings and proofs complainant insists that there is a clear case for equitable jurisdiction, and that there is fraud and undue influence,—constructive fraud, growing out of the time, and the relationship and condition of the parties,—and a total want and failure of consideration.

2 It is not necessary to show either insanity or incompetency, but, from the relations of the parties, the condition of complainant's mind arising from grief at the loss of his wife, and the confidence reposed in the defendant the same as a son, in connection with an inadequate consideration, or failure of consideration, a court of equity will presume fraud and undue influence, and avoid the deed unless the defendant makes a clear and conclusive showing of fairness and good faith, and clears himself from such presumption; citing *Allore v. Jewell,* 94 U. S. 506; *Harding v. Handy,* 11 Wheat. 103; *Crawford v. Hoeft,* 58 Mich. 10; *Farmer's Ex'r v. Farmer,* 39 N. J. Eq. 211; *Condit v. Blackwell,* 22 Id. 481; *Porter v. Woodruff,* 36 Id. 174; *Tate v. Williamson,* 1 Eq. Cas. (L. R.) 528; *Cowee v. Cornell,* 75 N. Y. 91; *Boyd v. De La Montagnie,* 73 Id. 502; *Hall v. Perkins,* 3 Wend. 631; *Whelan v. Whelan,* 3 Cow. 572; *Case v. Case,* 26 Mich. 484; *Thorn v. Thorn,* 51 Id. 177; *Humphrey v. West,* 40 Id. 597; *Griffith v. Godey,* 113 U. S. 89; *Taylor v. Taylor,* 8 How. 183; *Seeley v. Price,* 14 Mich. 541; *Bowe v. Bowe,* 42 Id. 195.

*Eldredge & Spier,* for defendant, contended:

1 When one comes into a court of equity seeking to set aside a transaction from which he has received material benefits without making or offering to make restoration, his prayer for relief ought to be denied; citing *Bumpus v. Bumpus,* 59 Mich. 95; *Terry v. McClinstock,* 41 Id. 492, 502; *Connors v. Detroit,* Id. 128; *Goodenow v. Curtis,* 33 Id. 505; *Prout v. Wiley,* 28 Id. 164· *Miller v. Cornwell,* 71 Id. 270.

SHERWOOD, C. J. The bill in this case is filed for the purpose of obtaining a decree setting aside a deed made by complainant to the defendant of 120 acres of land lying in the township of Armada, in the county of Macomb, and being a farm upon which complainant had made his home for more than thirty years. The consid-

eration stated in the deed is the sum of $6,000, but which was in fact to be the maintenance and support of the complainant upon his farm for and during his natural life by the defendant. The conveyance was made June 8, 1886.

The defendant appeared and answered the bill, and the cause was heard on pleadings and proofs in the Macomb circuit before Judge Canfield, who dismissed the bill, with costs against complainant, and he now appeals to this Court to grant him the relief for which he prays.

The bill was filed August 14, 1888. The complainant at the time he made the deed to defendant, it is claimed, was about 60 years of age, had no children, and, but six days before, had lost his wife, and was left entirely alone in his home. The defendant, who had lived in the family of complainant from the time he was eight years of age until he was 21, and who was the nephew of the complainant, at the time of making the deed was married, and lived at North Adams, in the state of Massachusetts, and had always manifested much respect and affection for his uncle, who had in return, on several occasions, expressed his intentions to make him heir to his property.

The record shows that the defendant came from Massachusetts on learning of the death of his aunt (complainant's wife), and was present at her funeral, and afterwards remained a few days with his uncle; and complainant states in his bill that it was during this period, and while he was borne down with grief, and the desolate condition of his home, and not knowing what to do, the defendant proposed to abandon his business in Massachusetts, and come with his family and live with and make a home for complainant, and care for him, and that in consideration of defendant's promises and agreements so

to come and make him a home, and support him in health and in sickness during life, complainant agreed to deed the lands set forth in the bill to defendant, and that he did execute and deliver a deed thereof accordingly, which was recorded, the expressed consideration of which was $6,000, but the true and only consideration therefor was said agreement, which was recited on the face of the deed; that complainant has frequently requested defendant to come and perform his agreement, but that he refuses, and has not performed, and still neglects and refuses so to do; that defendant took an undue advantage of complainant's condition to obtain the title of the lands by his said promise and agreements, and that it was only by reason of the fact of his grief and desolate condition, and the promises of defendant, that he obtained said deed; that he had left complainant without a home or support, and he has been obliged to make it for himself; that the value of the lands, $6,000, was made wholly by complainant's labor; that defendant obtained the deed solely upon the promise and consideration of his performing such agreement, and that the agreement was made by him to obtain the title, without intending to perform it; and that the consideration has wholly failed, and the defendant has fraudulently obtained the title, and still holds and refuses to perform or reconvey.

Complainant asks for a cancellation of the deed, and a reconveyance of the property to him, or that a decree to that effect may be made, to operate as a conveyance, and for general relief. Such is the substance of the bill and complainant's prayer.

The answer made by defendant admits the residence, relationship of the parties, the deed, ownership of the lands, the death of complainant's wife, and that he had no children; the execution of the deed, with its recital;

the record; the residence and business of defendant, and that he formerly lived with complainant; states that he aided complainant with money in the improvement of the farm; that he was treated as a son, and was informed he was to have the farm, which induced him to expend money for complainant; that by reason of relationship, and the money he had expended for complainant, the deed was made; that the proposition of making the deed was complainant's; denies that as an inducement he agreed to remove to the lands and make his home thereon and support complainant; that when complainant proposed to secure him upon the farm it was talked that, as soon as he could, he would, with his family, remove to the farm, and then, with the proceeds, support complainant; that such has been his intention, but he has been delayed by litigation and sickness, and complainant has consented to the delay; denies that he promised to remove to the farm and support complainant as a consideration for the deed; and avers that he was only to do it as he reasonably could; that his remaining has been with the consent of complainant; denies that he took undue advantage of the condition of complainant to get the title by reason of any promises.

Defendant denies that he has violated his agreement; and avers that complainant has had the use of the farm; that he has visited complainant, and aided him in arranging his household, until his marriage; that he has put up a monument for complainant at a cost of $500; that the monument was talked of when the deed was proposed; denies that the deed was obtained by fraud, or that he has made any promise he has not fulfilled as an inducement of making the deed; avers that until the marriage of complainant, in August, 1887, there was no suggestion that his remaining at North Adams was not fully approved; denies that complainant has requested him to perform the

agreement; denies that he has fraudulently obtained or holds the title to the lands, or that he has intended not to remove to the lands; and avers that his delay was by complainant's consent; denies the equity of the bill, and asks the advantage of demurrer,—and this is the substance of the answer.

It is apparent from what appears in the testimony that the complainant's object in making the deed was to secure a place in the family of defendant, in his old home upon his farm; and to obtain it he was willing to give in exchange for it all his property. The deed itself bears strong evidence of this. After reciting that the consideration was $6,000, we find the following clause:

"The said party of the first part reserves the use, occupancy, and possession of said premises for and during the term of his natural life, to secure to himself the comfortable support, in health and sickness, by said second party, which forms the consideration hereinbefore expressed."

His continued home upon the farm, with such care and comfort as he could only expect from his kindred and relatives, and in this case which he had good reason to suppose he could receive from a kind and affectionate nephew, who had been reared in his family, and for 13 years was a member of his own household, who knew all of his wants and necessities in his old age, and how to administer to and supply them, were what he desired, and they were what constituted the consideration for the deed he gave of his property; that there can be no question but that both uncle and nephew understood the nature and character of the consideration which the latter was to give alike. I think no one can read the record in this case and come to any other conclusion than that this nephew comprehended fully the obligation and duty he placed himself under towards this old uncle

when he entered into the agreement he did with him, and received the conveyance of the property in question; and that under it it was his duty, within a reasonably short time, to remove upon the complainant's homestead, and there, in the house and home of the old gentleman, and there, in defendant's own family, discharge all the obligations which his contract imposed, in an acceptable and reasonable manner. No legal construction was required to be given to his contract with the complainant to inform him of his full duty in the premises. The testimony in the case shows that filial relations existing between these parties was relied upon by complainant, and ought to have been sufficient to secure the full performance of the contract between them on the part of the defendant; and courts of equity, when called upon to enforce such agreements, will take in consideration these relations, and the duties they impose, and, while they cannot enforce such duties in all cases, they will carefully look into the circumstances of each case presented, and see to it that the rights they can enforce and preserve of the injured party are not prejudiced by any disregard of such duties.

There are but two questions in the case needing further consideration:

1. Has the defendant performed his agreement with the complainant, as herein construed, constituting the consideration for the conveyance of the complainant's farm?

2. If he has not, can he do so in the future, and make proper and adequate recompense and reparation for his past delinquency?

Without bringing into this discussion of these questions the testimony upon which I base my judgment, and by which it is fully supported, though it conclusively appears in the record, I shall content myself with a brief statement of the conclusions I have reached in the case.

As to the first question, it is not seriously urged that defendant has yet made such performance as a reasonable execution of the contract on his part would require; but he seeks to excuse his failure to perform on the ground of sickness in his family, and the acquiescence of complainant in the course pursued by defendant.

It is apparent from the testimony that sickness of defendant or of his family did not preclude him from performing his contract made with the complainant; and it is equally apparent that the aversion of the defendant's wife and children to remove to the farm had much more to do with defendant's failure to perform, and I do not think the acquiescence of complainant in the defendant's delay to comply with his agreement is made out in the proofs. Upon this point no more appears than he submitted with composure to that which he could not prevent; but at no time did he willingly consent to being left alone, or to the indefinite postponement of the duties and obligations which the defendant, by his contract, had assumed.

The failure of the defendant to perform his agreement being established, upon the decision of the second question depends the nature and character of the relief to be granted, if any. It is impossible for the defendant now to carry out his contract made with complainant. It is not in the defendant's power to furnish to complainant in the future that which he could only enjoy in the past. Two years of that home life and its surroundings promised by the contract has been lost to the complainant, and which the defendant can never restore to him. Added to this also has been the mortification of complainant over the loss of the title to his farm, and the control of it, only as he could use it in making his living, which was one of the things he sought to avoid when he made his contract with the defendant. Indeed, if not

probable, it is possible, that the time which has elapsed since the making the contract may be the last two years of complainant's life, and, should this be so, the defendant would secure the property without giving any consideration therefor. And, after waiting more than a year for the defendant to redeem his promises with complainant, he found himself obliged to provide for himself the care and attention of some one who could sympathize with him, and administer to his wants and infirmities as he passed into old age, if such should be his fortune, and complainant married his second wife in the month of July, 1887, and with whom he lived at the time of filing his bill in this case.

Under these circumstances it is very manifest the grievance of which the bill makes complaint can be redressed only by a reconveyance of the property to complainant, and I think the decree at the circuit should be set aside, and a new decree should be entered in this Court in accordance with the prayer of the bill, with costs of both courts.

It is claimed in any event the defendant should be re-imbursed for the money he paid out for a monument for complainant for his deceased wife. Under the pleadings in the case we can make no order for such payment. We may say, however, that justice would seem to require that this should be done by complainant.

The other Justices concurred.